UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROSALIE APPEL | : | |
| | : | |
| VS. | : | NO. 3:06CV1177(SRU) |
| | : | |
| CHARLES P. SPIRIDON, | : | |
| LINDA VADEN-GOAD, | : | |
| LINDA RINKER and | : | |
| JAMES SCHMOTTER | : | OCTOBER 19, 2006 |

## A M E N D E D   C O M P L A I N T

1.  This is an action to redress the deprivation of rights secured to the plaintiff by the Constitution and laws of the United States and the State of Connecticut.

2.  Jurisdiction of this court is invoked under the provisions of Sections 1331, 1343(3) and 1367(a) of Title 28 and Sections 1983 and 1988 of Title 42 of the United States Code.

3.  The plaintiff is an adult citizen of the United States with a residence in New York City.  She is, and has been for more than forty years, a tenured professor at Western Connecticut State University in Danbury.

4.  During all times mentioned in this action, the defendant Charles P. Spiridon has been the Dean of Human Resources at Western Connecticut State University; the defendant Linda Vaden-Goad has been Dean of Arts and Sciences

1

at Western Connecticut State University; the defendant Linda Rinker has been the Provost and Vice President for Academic Affairs at Western Connecticut State University; and the defendant James Schmotter has been the President of Western Connecticut State University.  They are sued only in their individual capacities for compensatory and punitive damages but in both their individual capacities and their official capacities for prospective injunctive relief and attorney fees.

     5.  During all times mentioned in this Complaint, the defendants were acting under color of law, that is, under color of the constitution, statutes, laws, rules, regulations, customs and usages of the State of Connecticut.

     6.  At all times mentioned in this Complaint, the defendants acted jointly and in concert with each other.  Each defendant had the duty and the opportunity to protect the plaintiff from the unlawful actions of the other defendant but each defendant failed and refused to perform such duty, thereby proximately causing the injuries herein complained of.

     7.  On May 12, 2005, the plaintiff testified at a public hearing of the Connecticut Commission on Human Rights and Opportunities regarding a complaint of unlawful race and ethnicity discrimination which had been brought against the aforesaid university by Hwa Young-Caruso.  Her testimony supported the claim of illegal discrimination and contradicted the position taken by the university.

8. The issue under consideration by the Commission on Human Rights and Opportunities at its aforesaid May 12, 2005, hearing had nothing to do with the plaintiff but did involve a matter of great public concern, that is, whether a public agency of the State of Connecticut violated state and federal law.  As such, her testimony was protected by the First Amendment to the United States Constitution.

9. Following the plaintiff's aforesaid testimony, the defendants began a series of retaliatory and harassing actions designed to punish her for having thus exercised her free speech rights.  These actions included holding the plaintiff to different and stricter standards of behavior and performance than those applicable to other faculty members, disregard of university regulations and customs insofar as they protected the rights and dignity of the plaintiff, and disparate treatment respecting the perquisites and rewards due to long-term distinguished tenured faculty members.

10.  On November 11, 2005, as a part of the aforesaid retaliation against the plaintiff for her exercise of protected rights, the defendant Vaden-Goad summoned a special faculty committee to investigate the plaintiff and ordered the plaintiff to submit herself to the said committee.  Defendant Vaden-Goad brought before the said committee the following accusations against the plaintiff:

    A. "Lack of respect for the majority decision of the department [including] department policy regarding the development of the course schedule."

   B. "Constant interruption when others are speaking."

   C. "Your insistence that you can determine other people's motivation" and describing an adjunct faculty member as "disingenuous."

   D. "Numerous emails accusing others of wrong doing without proper evidence or facts."

   E. "Making unsubstantiated accusations...."

   F. "Your claims that students are personally attacking you."

No other faculty member ever has been subjected to such an investigation upon the basis of such frivolous accusations.

  11. As a part of the defendants' aforesaid retaliation against the plaintiff, questionnaires were submitted to her students. Upon information and belief, no other tenured faculty member ever has been subjected to such an evaluative process.

  12. The plaintiff's students expressed enthusiasm for the plaintiff. Student comments included:

- "Professor Appel is great"
- "I loved this class"
- "Very informative"
- "This class was a lot harder than anticipated, but I got a lot out of it...."

13. Because the student survey failed to produce evidence against the plaintiff, the defendants caused a second set of questionnaires to be submitted to the plaintiff's students. No other tenured faculty member ever has been subjected to such a process.

14. Even the second set of questionnaires resulted in student support for the plaintiff. As the committee itself admitted, the responses were predominantly positive for the plaintiff. "Most students believe that time spent in class was worthwhile, major points of the course were clear on the syllabus, the instructor was enthusiastic and knowledgeable, the assignments were challenging, and helped them develop understanding of the subject."

15. Still having failed to obtain adverse commentary about the plaintiff, the defendants caused yet a third set of questionnaires to be submitted to the plaintiff's students. No other tenured faculty member ever has been subjected to such an evaluation process.

16. Thereafter, as a further part of the aforesaid retaliation, defendant Spiridon, in conspiracy with defendant Vaden-Goad, on July 11, 2006, ordered the plaintiff to submit to a psychiatric evaluation at The Institute of Living. No other tenured faculty member ever has been subjected to such a requirement.

17. When the plaintiff objected to the requirement that she submit to a psychiatric evaluation, defendant Spiridon on July 25, 2006, advised the plaintiff that

if she failed to submit thereto she would be subjected to disciplinary action. No other tenured faculty member ever has been subjected to such an order.

18. As a result, this litigation was instituted on the dates that appear of record herein.

19. Thereafter, on September 7, 2006, the defendant Spiridon caused a letter to be delivered to the plaintiff informing her "of the University's intent to suspend you without pay effective September 14, 2006, until such time that you agree to make yourself available for the assessment...."

20. In fact, the defendants suspended the plaintiff without pay on September 14, 2006, and she remains under suspension with no pay at this time.

21. Moreover, the defendants, acting jointly and in concert, have barred the plaintiff from teaching any of her classes and from seeing any of her students even at her university office.

22. Said actions have been in retaliation, both for the plaintiff's original exercise of protected First Amendment rights described above and for having filed this present lawsuit in defense of those rights.

23. As a result, the plaintiff is suffering great humiliation and embarrassment, as well as loss of pay and benefits.

24. In the manner described above, the defendants have violated the

plaintiff's right to freedom of speech under the First Amendment to the United States Constitution as enforced through Sections 1983 and 1988 of Title 42 of the United States Code.

25.  In the manner described above, the defendants have subjected the plaintiff to disparate treatment in her employment maliciously and for the purpose of punishing her for engaging in constitutionally protected conduct, in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution as enforced through Sections 1983 and 1988 of Title 42 of the United States Code.

26.  In the manner described above, the defendants have subjected the plaintiff to adverse employment action different from that imposed upon any other identically-situated faculty member, irrationally and intentionally, in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution as enforced through Sections 1983 and 1988 of Title 42 of the United States Code.

27.  As a result, the plaintiff has suffered and will suffer emotional distress and economic loss.

WHEREFORE, the plaintiff claims judgment against the defendants and each of them, jointly and severally, for compensatory damages, punitive damages, prospective injunctive relief, attorney fees and costs.

***The plaintiff claims trial by jury.***

                                      THE PLAINTIFF


                                      BY:_____/s/_____
                                      JOHN R. WILLIAMS (ct00215)
                                      51 Elm Street
                                      New Haven, CT 06510
                                      203.562.9931
                                      Fax:  203.776.9494
                                      jrw@johnrwilliams.com
                                      Her Attorney


CERTIFICATION OF SERVICE

On the date above stated, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


                                      _____/s/_____
                                      JOHN R. WILLIAMS